NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| _____ | : | |
| ISOBUNKERS, LLC, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 07-2107 (GEB) |
| v. | : | |
| | : | **MEMORANDUM OPINION** |
| WILLIAM R. CONNALLON and UNITED | : | |
| STATES OF AMERICA, | : | |
| | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**BROWN, Chief Judge**

        This matter comes before the Court upon the Motion to Dismiss of the United States and

the Motion for Summary Judgement of Isobunkers, LLC ("Plaintiff" or "Isobunkers").    The

Court has reviewed the parties' submissions and decided the motion without oral argument

pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below the Court will

grant the United States' motion to dismiss Plaintiff's claim and deny Plaintiff's motion for

summary judgment.

## BACKGROUND

        On August 4, 2003, Isobunkers extended a loan to Texas Liquids "by and through

[William] Connallon ("Connallon") in consideration for its promise to pay Isobunkers

$1,880.000.00 by September 4, 2003.[1]  Connallon personally guaranteed the loan.  Plaintiff

---

        [1] Unless indicated otherwise, all facts are taken from Plaintiff's  "Statement of
Undisputed Material Facts," which was not contested by the United States.

maintains that Connallon procured the loan through fraud by falsely representing that the loan would be used for legitimate business purposes.  In reality, Plaintiff alleges that Connallon used the loan for other purposes, including personal use.  To secure the loan, Connallon granted Isobunkers a dead of trust in real property located at 6800 Ocean Drive, Avalon, New Jersey ("the Avalon property").  According to Plaintiff, Connallon represented that he was the owner of the Avalon property.  However, Plaintiff maintains that Connallon in fact held an unrecorded ownership in the property, which was titled in the name of Elizabeth Bozzzelli.  Plaintiff asserts that Texas Liquids and Connallon defaulted under the terms and conditions of the Note and Guaranty by failing to make payments due, despite demand.

On May 13, 2004, Plaintiff filed a motion for judgment in the Circuit Court for the City of Norfolk, Virginia, to recover the debt owed to Plaintiff based on the Note and Guarantee.   A trial ensued and on January 27, 2005, the Circuit Court for the City of Norfolk entered a judgment order against Connallon in the principal amount of $1,880,000.00 in addition to interest at 9% annum and all attorneys' fees and costs.  On May 4, 2005, Plaintiff recorded the judgment in New Jersey Superior Court, giving notice to Connallon.

In 2004, Connallon and his wife initiated divorce proceedings, which resulted in a Consent Order that provided for the sale of the Avalon property, with 22.25% of the sale going to Elizabeth Bozzelli and the balance going to the Connallons.  On August 17, 2005, Connallon and his wife entered into a Property Settlement Agreement, which provided Connallon with approximately $851,000, derived from the sale of the house and the distribution of funds held in escrow during the proceedings.

In late May and June 2005, the United States contacted Connallon and his attorney James

Murphy to discuss suspected criminal conduct on the part of Connallon and to initiate plea negotiations.  Plaintiff alleges that the United States was aware of the sale of the Avalon property "substantially when it occurred in August 2005."  Connallon eventually pled guilty to fraud in connection with the United States' investigation.  Prior to his plea, Connallon agreed to transfer $255,000 into Mr. Murphy's trust account to be held in escrow for the purpose of paying restitution to the victims of Connallon's fraud, after a judgment was filed in the criminal case.  The money was transferred into Mr. Murphy's account on September 6, 2005.

On March 12, 2007, Judge Linda R. Feinberg of the Superior Court of New Jersey issued a Writ of Execution commanding Connallon to satisfy the January 27, 2005 judgment against him out of his own personal property.  On March 13, 2007, the Writ was delivered to the Sheriff of Somerset County, New Jersey and on March 15, 2007, the Sheriff served the Writ on Mr. Murphy.

Four days later, on March 19, 2007, this Court entered a restitution judgement against Mr. Connallon in the criminal matter in the amount pf $6.904.131.00.  In sentencing Connallon, this Court expressly considered that Connallon deposited the $255,000 into escrow for the purpose of paying restitution to the victims.  The Court also permitted any victim disputing their status or "the amount of their stated loss or the pro rata distribution of any restitution" to file an objection.  Isobunkers filed such an objection.

## DISCUSSION

### A.    STANDARDS

#### 1.    Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only

if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A complaint will survive a motion under Rule 12(b)(6) if it states plausible grounds for plaintiff's entitlement to the relief sought. *Id*. at 1965-66 (abrogating *Conley*'s standard that the "complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").  In other words, it must contain sufficient factual allegations to raise a right to relief above the speculative level. *Id*. at 1965. The issue before the Court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." *Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus*., 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied* 510 U.S. 1042 (U.S. Jan. 10, 1994) (No. 93-661).

2.    Motion for Summary Judgment

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P.  56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether there are "any genuine

4

factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987).

    B.    APPLICATION

    In Isobunkers' complaint, it seeks an order declaring that its "interest claim, entitlement, and lien on the Funds is superior to and first in time before any federal lien that arose at the entry of the order of restitution" in the criminal matter. Isobunkers further seeks an order directing the funds in escrow to be paid to Isobunkers and a judgement that Isobunkers possesses a superior claim to any "real estate, personal property, and assets" of Connallon over the Federal Government.

    In its motion to dismiss, the United States argues that once the funds at issue were deposited into Mr. Murphy's escrow account, these funds were no longer assets of Mr. Connallon and as such could not be levied by Connallon's creditors, including Isobunkers. Def Mot. at 5. The United States further asserts that title was transferred to the United States upon this Court's entry of the restitution judgment, which was the contingency specified in the escrow agreement. Id.

    In its opposition and cross-motion for summary judgment, Isobunkers argues that it is

5

entitled to the escrowed funds because "it obtained its judgment before any equitable lien of the United States arose and [because Isobunkers] levied on the funds before any equitable interest of the United States vested." Plaint's Opp. at 7-15. Isobunkers also urges that awarding the funds to the United States would violate Isobunkers' Constitutional right to enforce a lawful judgement. Id. at 13-14. Finally, Isobunkers posits that but for the fraudulent titling of the Avalon property, Isobunkers judgement lien would have attached to that property, and the sale of the property would have resulted in Connallon's share going to Isobunkers. As such, Isobunkers argues that under principles of equity, the United States may not benefit from Connallon's fraudulent hiding of his interest in the Avalon property. Id. at 15-17. The Court disagrees with Plaintiff's arguments.

Plaintiff's argument that the Virginia judgment entitles it to the escrowed funds as a matter of law is misplaced. *See* Plaint's Mot. at 7-9. We are also unpersuaded by Isobunkers' argument that it is entitled to the funds in escrow because it levied on the funds before the United States' interest in the funds vested. A judgement in New Jersey creates a lien only on real property. As the Bankruptcy Court has explained,

> [i]n New Jersey, a judgment becomes a lien on all of a debtor's real property located in the state when it is recorded on the docket of the Clerk of the Superior Court. N.J. Stat. Ann. § 2A:16-1 (West 2000); N.J. Stat. Ann. § 2A:17-17 (West 2000); *In re Blease*, 605 F.2d 97, 98 (3d Cir. 1979); *Italiano v. Palese* (*In re Italiano*), 66 B.R. 468, 476 (Bankr. D.N.J. 1986); *New Brunswick Savings Bank v. Markouski*, 123 N.J. 402, 587 A.2d 1265, 1269-70 (N.J. 1991). To obtain a lien on the debtor's personal property, the judgment creditor must obtain a writ of execution from the Superior Court and then have the sheriff levy on the debtor's personal property. *Blease*, 605 F.2d at 98; *Italiano*, 66 B.R. at 476; *Vineland Savings & Loan Ass'n v. Felmey*, 12 N.J. Super. 384, 393, 79 A.2d 714 (Ch. Div. 1950).

*In re Hamilton*, 286 B.R. 291, 292-293 (Bankr. D.N.J. 2002).

6

Isobunkers entry on the New Jersey docket of its Virginia judgment therefore created a lien only on any real property owned by Mr. Connallon, and not on any of his personal property such as the funds in escrow.

To reach Mr. Connallon's personal property, including the funds at issue, Isobunkers was required to levy.  *See Blease*, 605 F.2d at 98.  On March 12, 2007, Isobunkers did indeed cause the Superior Court of New Jersey to issues a Writ commanding the Somerset County Sheriff to satisfy the Virginia judgment out of the personal property of Conallon.   The Writ was delivered to the Sheriff the next day.  *See* Plaint Br. at 6-7.  However, Isobunkers' interest as a judgment creditor was subject to any pre-existing equitable interests in the funds put in escrow.  *See Arrow Mill Dev. Corp. v. Shoprite of Clinton* (*In re Arrow Mill Dev. Corp.*), 185 B.R. 190, 194 (Bankr. D.N.J. 1995)("the deposit of property in escrow 'creates in the grantee such an equitable interest in property that upon full performance of the conditions according to the escrow agreement, title will vest at once in him.'")(citation omitted); *see also In re Coco*, 67 B.R. 365, 369 (Bankr. D.N.Y. 1986)("escrow cases are uniform in holding that it is the debtor's deposit of funds into escrow and not the award of judgment or subsequent release of the funds that is the controlling transfer for preference purposes.").  In this case, the escrow account was established for the purpose of paying restitution to the victims of Connallon's crimes over a year-and-a-half before Isobunkers levied those funds.  See Plaint Br. at 5.  As such, the victims of Mr. Connallon's fraud maintained an equitable interest in the funds in escrow superior to the lien created by Isobunkers' execution of the Writ.

The Court agrees with Plaintiff that it possesses a constitutionally protected property right to retain a lien until it recovers the debt it is owed.  See Plaint. Br. at 13; *See also*

*United States v. Perry*, 360 F.3d 519, 525 (6th Cir. 2004).  The Court in no way depriving Plaintiff of its lien against the funds in escrow.  However, as discussed above, Plaintiff's lien is subject to the interest of the grantees of the escrow account.  As a victim, Plaintiff shall share in the proceeds of the escrow fund, which will be paid to all victims of Connallon's fraud. Equitable principles require that all victims (and not just Plaintiff) receive some restitution for their losses.

Finally, the Court is also unpersuaded by Plaintiff's argument that it must be granted a constructive trust upon the funds to prevent the United States from unfairly benefitting from Connallon's alleged fraudulent titling of the Avalon property.  The United States itself has no interest in these funds.  Rather, it is the victims of Connallon's crimes (including Plaintiff) who will be paid restitution from the formerly escrowed funds.  It would be unfair to all of the other victims of Mr. Connallon's crimes to award all of the funds to Plaintiff.

## CONCLUSION

For the foregoing reasons, the United States' motion to dismiss is granted and Plaintiff's motion for summary judgment is denied.  An appropriate form of Order accompanies this Opinion.

Dated: February 19, 2008

s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.

-

8